# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 15-CV-0242 (JFB)(GRB)

SUNRISE ONE, LLC AND
SUNRISE ONE OPERATING LLC D/B/A ROCKVILLE CENTRE INN,

Plaintiffs,

VERSUS

HARLEYSVILLE INSURANCE COMPANY OF NEW YORK,

Defendant.

**MEMORANDUM AND ORDER**
March 28, 2018

JOSEPH F. BIANCO, District Judge:

Sunrise One, LLC and Sunrise One Operating LLC, doing business as the Rockville Centre Inn, (collectively, "Sunrise" or "plaintiffs") bring this action against Harleysville Insurance Company of New York ("Harleysville" or "defendant") for breach of an insurance contract. Plaintiffs own and operate a hotel called the Rockville Centre Inn, located in Nassau County, New York. According to plaintiffs, the Rockville Centre Inn sustained wind and rain damage during Hurricane Sandy in October 2012. After inspecting the hotel, however, Harleysville determined that Hurricane Sandy did not cause damage to the Rockville Centre Inn, and denied coverage for damage to the hotel, as well as for business income losses resulting from that damage. This lawsuit eventually resulted.

Presently before the Court are motions for partial summary judgment. In its motion, Harleysville argues that it is entitled to summary judgment on (1) Sunrise's claim for business income losses; (2) Sunrise's claim for consequential damages; and (3) Sunrise's claim for attorney's fees and costs. Harleysville additionally seeks summary judgment on Sunrise's attempt to use its Third Estimate of Damages, and instead, seeks to limit Sunrise to the damages sought in its Second Estimate. Sunrise's motion, in turn, argues that Sunrise is entitled to summary judgment on Harleysville's third through fourteenth affirmative defenses, and that Harleysville's third through eleventh affirmative defenses should be stricken as redundant under Federal Rule of Civil Procedure 12(f).

For the reasons that follow, the Court grants summary judgment to Harleysville on (1) Sunrise's claim for business income losses; (2) Sunrise's claim for consequential damages; and (3) Sunrise's claim for attorney's fees and costs. The Court denies Harleysville's motion for summary judgment on plaintiffs' Third Estimate of Damages because there are disputed issues of fact that preclude summary judgment on the issue of whether the Third Estimate of Damages was timely under the at-issue insurance contract. Finally, the Court denies Sunrise's motion for summary judgment and motion to strike.

I. BACKGROUND

A. Facts[1]

At all times relevant to this litigation, non-parties Thomas Morash, Sr., Rosemary Morash, Thomas Morash, Jr., and Michael Morash ("the Morash Family") owned three hotels in Nassau County: The Five Towns Motor Inn, the Holiday Inn Express, and the Rockville Centre Inn. (Pls. 56.1 ¶ 180.) Although Harleysville insures all three properties (Def. 56.1 ¶ 20), only the Rockville Centre Inn is the subject of this litigation. The Rockville Centre Inn is an approximately 40,000 square foot, five-story hotel, with 68 guest rooms. (*Id.* ¶ 76.) Plaintiff Sunrise One LLC owns the Rockville Centre Inn property (*id.* ¶ 21), and plaintiff Sunrise One Operating LLC operates the hotel (*id.* ¶ 22).

Sunrise obtained property insurance on the Rockville Centre Inn from Harleysville, effective from April 22, 2012 to April 22, 2013 ("the Insurance Policy").[2] (Def. 56.1 Ex. 7.) Under the Insurance Policy, Harleysville agreed to cover, *inter alia*, (1) "direct physical loss of or damage to" the Rockville Centre Inn and (2) "the actual loss of Business Income . . . result[ing] from" such loss or damage, with limitations. (*Id.*) In the event of any loss or damage to the Rockville Centre Inn, Sunrise agreed to, *inter alia*, (1) provide Harleysville "prompt notice of the direct physical loss or damage[,] includ[ing] a description of the property involved"; (2) "[a]s soon as possible, give [Harleysville] a description of how, when, and where the direct physical loss or damage occurred"; (3) "[a]t [Harleysville's] request, give [Harleysville] complete inventories of the damaged and undamaged property[,] includ[ing] quantities, costs, values and amount of loss claimed"; and (4) "cooperate with [Harleysville] in the investigation or settlement of the claim." (*Id.*)

In late October 2012, Hurricane Sandy made landfall on the east coast of the United States. Sunrise asserts that the rain and high winds resulted in substantial damage to the Rockville Centre Inn. (*E.g.*, Pls. 56.1 ¶¶ 180, 202-04.) According to plaintiffs, Michael Morash drove by all three Morash Family hotels on October 29, 2012, and "noted visible wind damage, water penetration issues, and various leaks at each property." (*Id.* ¶ 180.) Plaintiffs further assert that, on November 9, 2012, Michael Morash reported, via telephone, damage to all three hotels to the broker for all three insurance policies (*id.* ¶¶ 181-84), and that in January 2013, he submitted a claim via

---

[1] With respect to each motion and the issues raised therein, the Court construes the facts in the light most favorable to the nonmoving party. Unless otherwise indicated, where a party's Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any contradictory evidence in the record.

[2] The Five Towns Motor Inn and the Holiday Inn Express are insured by Harleysville under separate contracts with distinct corporate entities controlled by the Morash Family. (Def. 56.1 ¶ 20.)

2

email (*id.* ¶ 187).[3]

Harleysville disputes that Michael Morash submitted a claim for damage to the Rockville Centre Inn on November 9, 2012, or in January 2013. (*E.g.*, Def. 56.1 ¶¶ 24-25, 29.) Harleysville further asserts that, based on an inspection conducted by its general adjuster, consulting engineer, and building consultant, Hurricane Sandy did not cause damage to the Rockville Centre Inn.[4] (*E.g.*, *id.* ¶¶ 82-85.)

B. Procedural History

The Court assumes familiarity with the lengthy procedural history of this case, and provides only a brief recitation here. Plaintiffs filed the original complaint in this action on January 15, 2015. Plaintiffs sought leave to amend the complaint on June 21, 2016, which the Court granted on July 29, 2016. Thereafter, on August 3, 2016, plaintiffs filed the first amended complaint. Defendant answered on August 10, 2016. On July 28, 2017, plaintiffs moved for partial summary judgment. On September 27, 2017, defendant moved for partial summary judgment. The parties filed oppositions on October 27, 2017 and replies on November 15, 2017. The Court heard oral argument on both motions on December 19, 2017. The Court has fully considered the parties' submissions and arguments.

II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material

---

[3] Harleysville argues that Exhibit M to Sunrise's opposition to summary judgment is not competent evidence that Mr. Morash submitted a claim via email in January 2013. However, the Court finds that a genuine dispute of material fact exists as to whether Sunrise submitted a timely claim to Harleysville without considering Exhibit M, and, therefore, need not reach this argument.

[4] Although Harleysville disputes that Hurricane Sandy caused damage to the Rockville Centre Inn, that issue is not presently before the Court for determination.

3

facts . . . . [T]he non-moving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. The non-moving party may not rest upon conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Thus, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

Where, as here, the parties have filed cross-motions for summary judgment, "the court must consider each motion independently of the other and when evaluating each, the court must consider the facts in the light most favorable to the nonmoving party." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014); *see also Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) ("[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." (citing *Schwabenbauer v. Board of Educ. of Olean*, 667 F.2d 305 (2d Cir. 1981))).

III. HARLEYSVILLE'S MOTION

A. Business Income Losses

Harleysville argues that summary judgment is warranted on Sunrise's claim for lost business income for four independent reasons: (1) Sunrise did not sustain a covered business income loss under the Insurance Policy's plain terms; (2) Sunrise failed to timely notify Harleysville of its business income loss claim; (3) Sunrise waived its right to pursue lost business income; and (4) Sunrise is estopped from seeking lost business income. As explained below, the Court grants summary judgment to Harleysville based on the plain language of the Insurance Policy. Because it grants summary judgment on this ground, the Court need not, and does not, reach the alternative grounds.

As noted above, the Insurance Policy provides that Harleysville will cover business income losses resulting from covered damage to the Rockville Centre Inn, with certain limitations. This coverage is established in the Insurance Policy's "Business Income (and Extra Expense) Coverage Form" ("the Business Income Form"), which provides that Harleysville will "pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'" (Def. 56.1 Ex. 54.)[5] The Court will now examine this language in more detail, and apply the provisions to the facts of this case.

1. The Period of Restoration

The parties dispute the length of the "period of restoration" under the Insurance Policy. The Business Income Form defines the "period of restoration" as the period of

---

[5] Exhibit 54 is the Business Income Form, excerpted from the Insurance Policy.

4

time that "begins 72 hours after the time of direct physical loss or damage . . . caused by or resulting from any Covered Cause of Loss at the described premises" and "ends on the earlier of":

> (1) The date when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality; or
>
> (2) the date when business is resumed at a new location.

(*Id.*)

Attached to the Insurance Policy is an "Actual Loss Sustained" endorsement ("the Endorsement"), which states that it "modifies insurance provided under the . . . Business Income (and Extra Expense) Coverage Form." (Def. 56.1 Ex. 55.)[6] As relevant here, the Endorsement further states that "[t]he following replaces paragraph B. of 3. 'Period of Restoration' of G. Definitions":

> B. Ends on the earlier of:
>
> (1) The date when the property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality; or
>
> (2) the date when business is resumed at a new location; or
>
> (3) the anniversary date that ends a 12 consecutive month period after the date on which the direct physical loss of or damage to the property occurred at the described premises which caused the "suspension" of your "operations".

---

[6] Exhibit 55 is the Endorsement, excerpted from the Insurance Policy.

(*Id.*)

Harleysville contends that the Endorsement unambiguously modifies the definition of "period of restoration" such that the period ended no later than "12 consecutive month[s] after the date on which the direct physical loss of or damage to the property occurred." In response, Sunrise notes that the Endorsement purports to modify section "G. Definitions," but the Business Income Form's definitions section is section "F." Sunrise asserts that this incongruity demonstrates that the Endorsement does not modify the Business Income Form, or, at a minimum, creates an ambiguity. For the reasons explained below, the Court concludes that the Endorsement unambiguously modified the "period of restoration."

"The construction of an insurance contract is ordinarily a matter of law to be determined by the court." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003), *aff'd*, 88 F. App'x 441 (2d Cir. 2004). "In construing an endorsement to an insurance policy, the endorsement and the policy must be read together." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 84 (2d Cir. 2013). Policy terms are ambiguous if they are "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996)). On the other hand, "[p]olicy terms are unambiguous where they provide 'a definite and precise meaning, unattended by danger of misconception in

5

the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 642 (S.D.N.Y. 2016) (quoting *Olin Corp.*, 704 F.3d at 99). Courts must interpret unambiguous contract provisions according to their "plain and ordinary meaning," *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2011), and "give effect to the intent of the parties as expressed in the clear language of the contract." *Fed. Ins. Co.*, 639 F.3d at 567 (quoting *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002)).

Here, reading the Business Income Form and the Endorsement together, the Court concludes that the Endorsement unambiguously modifies the definition of "period of restoration." The Endorsement plainly states that it "modifies insurance provided under the . . . Business Income (and Extra Expense) Coverage Form." (*Id.*) Moreover, the Endorsement's modification to the definition of the "period of restoration" identifies the correct paragraph and subsection in which that definition is located in the Business Income Form. (*Id.*) The Endorsement's reference to "G." as opposed to "F." is a clear typographical error that does not render the definition of "period of restoration" ambiguous. *C.f.*, *Axis Ins. Co. v. Stewart*, 198 F. Supp. 3d 4, 13-14 (N.D.N.Y. 2016) ("minor drafting irregularity" did not render endorsement ambiguous "in light of its consistent text and structure"). Accordingly the Court concludes that the Endorsement modified the definition of "period of restoration" such that the period terminated no later than "12 consecutive month[s] after the date on which the direct physical loss of or damage to the property occurred."

2. Sunrise Did Not Suspend Operations During the Period of Restoration

As noted, Harleysville agreed to cover the "actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'" (Def. 56.1 Ex. 54.) "Suspension" is defined as "the cessation or slowdown of your business activities." (*Id.*) As modified by the Endorsement, the "period of restoration" began "72 hours after the time of direct physical loss or damage . . . caused by or resulting from any Covered Cause of Loss at the described premises" and ended no later than "the anniversary date that ends a 12 consecutive month period after the date on which the direct physical loss of or damage to the property occurred." (Def. 56.1 Ex. 55.) Thus, as applied to the facts of this case, the "period of restoration" began approximately 72 hours after Hurricane Sandy and ended twelve months after the Rockville Centre Inn was allegedly damaged by the storm (approximately October 30, 2013). Accordingly, under the Insurance Policy's unambiguous terms, Sunrise must have experienced a "suspension"—a cessation or slowdown of its business activities—at least 72 hours after Hurricane Sandy and before October 30, 2013, in order to be entitled to lost business income.[7]

Sunrise concedes that it did not experience a cessation or slowdown of business activities during that time period. At his examination under oath, Sunrise's corporate representative, Michael Morash,

---

[7] Sunrise's argument that, before the issue of loss of business income can be addressed, there must first be a factual finding as to whether the Rockville Centre Inn sustained any damage as a result of Hurricane Sandy misses the mark. Although business income losses are covered only when they result from covered damage, Sunrise must also have experienced a "suspension" of "operations" during the "period of restoration." (Def. 56.1 Ex. 54.)

6

testified that the Rockville Centre Inn was "only down for one day" as a result of Hurricane Sandy. (Def. 56.1 ¶ 119, Ex. 48.) Similarly, at his deposition in this litigation, Michael Morash testified that "we did not trigger business interruption due to the fact that we only had a power outage for twelve or sixteen hours or eighteen hours . . . and the policy clearly states that it is 72 or 74 hours needed to trigger business interruption." (*Id.* ¶ 165, Ex. 6.) Further, Sunrise does not dispute that the Rockville Centre Inn's operations were not interrupted as a result of Hurricane Sandy (*id.* ¶ 166); that the hotel's occupancy was at or near 100 percent in the two months following the storm (*id.* ¶ 167); or that the hotel actually *benefited* from unusually high demand for the year after Hurricane Sandy (*id.*).

Instead, Sunrise argues that, although it has not *yet* experienced a "suspension" of "operations," it will eventually be forced to close the Rockville Centre Inn for at least three months to repair the damage allegedly caused by Hurricane Sandy. This argument is unavailing. Under the Business Income Form's unambiguous terms, the "suspension" of "operations" must occur "during the 'period of restoration'" in order to trigger business income losses coverage. (*Id.* Ex. 54.) The Insurance Policy does not provide coverage for any "suspension" that occurs either before "72 hours after the time of direct physical loss or damage" or after "the anniversary date that ends a 12 consecutive month period after the date on which the direct physical loss of or damage to the property occurred." (*Id.*) Because Sunrise admits that its operations were not suspended within that time frame, any claim for lost business income is foreclosed.[8]

---

[8] As noted, Harleysville additionally argues that Sunrise waived its right to assert business income losses. In support, Harleysville points to, *inter alia*: (1) a May 1, 2014 email from plaintiffs' counsel

B. Consequential Damages

Harleysville argues that the Court should grant summary judgment on Sunrise's claim for consequential damages because there is no evidence that (1) Harleysville acted in bad faith or (2) that such damages were contemplated by the parties at the time of contracting. For the reasons explained below, the Court finds that there is no genuine dispute of material fact as to whether Harleysville acted in good faith, and accordingly grants summary judgment to Harleysville on Sunrise's claim for consequential damages. Because it grants summary judgment on this ground, the Court does not determine whether consequential damages were contemplated by the parties at the time of contracting.

An insured may recover consequential damages from an insurer only if "they derive from an insurer's bad faith refusal to pay an insured's claim and such damages were reasonably contemplated by both parties at the time of the contract's execution." *E.g.*, *Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 172-73 (E.D.N.Y. 2014) (collecting cases); *Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-CV-3876 (RRM) (RER), 2011 WL 743568, at *3 (E.D.N.Y. Feb. 24, 2011) ("Cases have virtually uniformly held that . . . a plaintiff simply 'cannot sustain a

---

stating that "[o]n Rockville Centre Inn the insured will not be presenting a business income claim" (Def. 56.1 Ex. 44); and (2) the fact that, when asked at his examination under oath in September 2014 whether it was Sunrise's "intent to present a business income claim with respect to Rockville Centre Inn," Michael Morash responded, "No, it is not. No, it is not" (*id.* Ex. 48). However, because the Court grants summary judgment on Sunrise's claim for business income losses based on the plain language of the Insurance Policy, it need not determine whether this evidence and the additional evidence cited by Harleysville demonstrates that Sunrise waived its lost business income claim.

claim for consequential damages without showing that defendants lacked good faith in processing [plaintiff's] claim.'" (quoting *Simon v. Unum Grp.*, No. 07–CV–11426(SAS), 2009 WL 2596618, at *7 (S.D.N.Y. Aug. 21, 2009))). Thus, "an insurer is not liable in excess of the policy limits for the breach of an insurance contract absent bad faith." *Jane St. Holding, LLC v. Aspen Am. Ins. Co.*, No. 13 Civ. 2291 (RWS), 2014 WL 28600, at *10 (S.D.N.Y. Jan. 2, 2014), *aff'd*, 581 F. App'x 49 (2d Cir. 2014) (quoting *In re AXIS Reinsur. Co. REFCO Related Ins. Litig.*, No. 07–CV–07924–JSR, 2010 WL 1375712, at *5 (S.D.N.Y. Mar. 7, 2010)).

To establish an insurer's bad faith, "the insured must demonstrate that 'no reasonable carrier would, under the given facts' deny coverage." *Id.* (quoting *Sukup v. State of New York*, 227 N.E.2d 842, 844 (N.Y. 1967)). A "[m]ere difference of opinion between an insurer and an insured over the availability of coverage" is insufficient. *Id.* (quoting *Sukup*, 227 N.E.2d at 844). Although courts in this Circuit acknowledge that an insured can theoretically recover consequential damages from an insurer in a breach of contract action, they "have generally found that the plaintiff was unable to meet the high standard to prevail on such a claim." *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 329-30 (N.D.N.Y. 2017) (citing *Ebrahimian v. Nationwide Mut. Fire Ins. Co.*, 960 F. Supp. 2d 405, 416 (E.D.N.Y. 2013)).

Here, the Court finds that there is no genuine issue of material fact regarding Harleysville's good faith in assessing Sunrise's claims and denying coverage. First, the uncontroverted evidence establishes that Harleysville was diligent in its efforts to assess plaintiffs' claims as soon as possible. Harleysville initially retained an independent adjuster, Robert Schepis, to inspect the Rockville Centre Inn. (Def. 56.1 ¶ 32.) Harleysville's contemporaneous claims notes establish that, from February 27, 2013 through March 25, 2013, Mr. Schepis contacted plaintiffs six times to attempt to schedule an inspection, but "got[] nowhere." (*Id.* Ex. 9.) On March 25, 2013, in accordance with instructions from Michael Morash, Mr. Schepis contacted Sunrise's construction consultant, John Minor, to schedule the inspection. (*Id.*) As of March 27, 2013, Mr. Minor had not returned Mr. Schepis's call. (*Id.*) Accordingly, on March 27, 2013, Harleysville prepared a reservation of rights letter, which it sent to Sunrise on April 3, 2013. (*Id.* Ex. 18.) That letter expressly reserved Harleysville's right to deny coverage and stated that Harleysville was doing so "because of your failure to comply with your . . . duties in the event of loss." (*Id.*)

Mr. Schepis eventually scheduled an inspection of all three Morash Family hotels for April 30, 2013. (*Id.* ¶ 42.) At plaintiffs' request, the inspections were rescheduled to May 1, 2013. (*Id.* ¶ 43.) According to plaintiffs, Mr. Schepis was unprofessional during the morning inspection of the Five Towns Motor Inn, and Mr. Minor accordingly canceled the remaining inspections for that day. (Pls. 56.1 ¶ 44.) The inspection resumed on May 2, 2013. (*Id.* ¶ 45.) According to Sunrise, Mr. Schepis was again unprofessional and "aggressive" with Mr. Minor, and Mr. Minor accordingly canceled the inspection. (*Id.* ¶ 46.)

In response to these reports, Harleysville promptly reassigned the claims to an internal adjuster, Steven LaPierre. (*Id.* ¶ 47.) Mr. LaPierre retained legal counsel, Steven Nassi, to assist with the Rockville Centre Inn claim. (Def. 56.1 ¶ 48) Mr. LaPierre

8

also retained an engineer, Mark Cipolone, and a construction consultant, Don Pierro, to assist with investigating Sunrise's claims. (*Id.* ¶¶ 49-50.) From May 22, 2013 through July 3, 2013, Mr. Nassi and plaintiffs' counsel, Javier Delgado, worked to schedule a date to inspect all three Morash Family hotels. (*Id.* ¶¶ 51-66.)

The inspection occurred on July 12, 2013. (*Id.* ¶ 72.) Mr. LaPierre, Mr. Cipolone, and Mr. Pierro attended the inspection on behalf of Harleysville. (*See id.* ¶¶ 82-85.) After inspecting the Rockville Centre Inn, Mr. Cipolone, an engineer, concluded that (1) the damage to the Rockville Centre Inn's roof was pre-existing; (2) "there was no wind damage to the windows"; (3) "the interior water damage was due to pre-existing roof leaks"; and (4) "the problems [he] observed at the [Rockville Centre Inn] were primarily due to a lack of maintenance and to normal age related deterioration." (*Id.* Ex. 31.) Mr. Pierro, a construction consultant, concluded that he was "unable to provide an estimate to repair storm damages because none were observed." (*Id.* Ex. 30.)

Based on the foregoing undisputed facts, the Court finds that there is no genuine dispute that Harleysville investigated Sunrise's claims, and denied coverage, in good faith. There is no evidence that Harleysville improperly delayed the inspection; to the contrary, the uncontroverted evidence establishes that Harleysville diligently attempted to schedule and conduct an inspection. When Harleysville was notified that Mr. Schepis may have been unprofessional at the inspection, Harleysville promptly reassigned the claim to Mr. LaPierre. Mr. LaPierre then worked diligently to retain experts and schedule an inspection.

Harleysville's coverage denial was based on the opinions of an engineer and a building consultant who independently determined that the damage to the Rockville Centre Inn was not caused by Hurricane Sandy. These opinions demonstrate that Harleysville had a sufficient basis to deny coverage, and accordingly foreclose any conclusion by a rational factfinder that no reasonable carrier would have denied coverage under the circumstances.[9]

In opposition to summary judgment, plaintiffs argue only that the Supplemental Report of Stephen L. Strzelec (*Id.* Ex. 60) creates a genuine dispute of material fact as to Harleysville's bad faith.[10] However, the Supplemental Strzelec Report does not establish that no reasonable insurer would have denied coverage. Instead, the report (at best) demonstrates a "general disapproval of [Harleysville's] investigation of the[] claim," insufficient to create a triable issue of fact as to Harleysville's good faith. *Ebrahimian v. Nationwide Mut. Fire Ins. Co.*, 960 F. Supp. 2d 405, 417 (E.D.N.Y. 2013). Accordingly, because the uncontroverted evidence demonstrates that Harleysville did not act in bad faith in assessing plaintiffs' claims or in denying coverage, the Court grants summary judgment on plaintiffs' claim for consequential damages.

C. Attorney's Fees and Costs

"Under New York law, it is 'well settled that an insured cannot recover his legal expenses in a controversy with a carrier over

---

[9] As noted, whether Hurricane Sandy in fact caused damage to the Rockville Centre Inn is not at-issue in the instant motions. The Court finds only that the opinions from Mr. Cipolone and Mr. Pierro establish that Harleysville did not deny coverage in bad faith.

[10] Plaintiffs do not cite any specific information or material in the Supplemental Strzelec Report to support this contention.

coverage, even though the carrier loses the controversy and is held responsible for the risk.'" *Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 67-68 (2d Cir. 2005) (quoting *Emp'rs Mut. Cas. Co. v. Key Pharm.*, 75 F.3d 815, 824 (2d Cir. 1996)). Sunrise argues that an exception to this prohibition exists when the insured makes "a showing of bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." *Nat'l R.R. Passenger Corp. v. Arch Specialty Ins. Co.*, 124 F. Supp. 3d 264, 280 (S.D.N.Y. 2015). As discussed above, however, Sunrise has failed to offer any evidence that Harleysville denied coverage in bad faith. Accordingly, even assuming such an exception exists, Sunrise is not entitled to attorney's fees or costs under the undisputed facts of this case.

D. The Third Estimate of Damages

Harleysville argues that Sunrise's third revised estimate of damages (the "Third Estimate") should be dismissed on summary judgment to the extent it asserts damages beyond those asserted in Sunrise's second revised estimate of damages ("the Second Estimate") because it is untimely under the policy. In other words, Harleysville argues that plaintiffs should be prevented from asserting damages contained in the Third Estimate that were not included in the Second Estimate. Harleysville contends that Sunrise's alleged failure to notify Harleysville of the new damages asserted in the Third Estimate until November 9, 2015 constituted a breach of Sunrise's obligations to promptly notify Harleysville of damage to the Rockville Centre Inn and to cooperate with Harleysville in the investigation of the claims. Harleysville also argues that Sunrise should be estopped from asserting the new damages contained in the Third Estimate. As explained below, the Court finds that genuine disputes of material facts preclude summary judgment on these issues.

First, genuine disputes of material facts exist as to whether Sunrise promptly notified, or reasonably delayed in notifying, Harleysville about the damages contained in the Third Estimate. Under New York common law, "[t]imely notice is a condition precedent to insurance coverage and the failure to provide such notice relieves the insurer of its coverage obligation, regardless of prejudice."[11] *Minasian v. IDS Prop. Cas. Ins. Co.*, 676 F. App'x 29, 31 (2d Cir. 2017) (citation omitted). Under a "prompt" notice provision, "an insured must provide such notice within a 'reasonable' period of time under the circumstances." *Ticheli v. Travelers Ins. Co.*, No. 1:14-CV-00172, 2015 WL 12734163, at *4 (N.D.N.Y. Mar. 14, 2015) (citing *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 287 (2d Cir. 2003)); *see also Granite State Ins. Co. v. Clearwater Ins. Co.*, No. 09 Civ. 10607 (RKE), 2014 WL 1285507, at *13 (S.D.N.Y. Mar. 31, 2014), *aff'd*, 599 F. App'x 16 (2d Cir. 2015) (collecting cases). Whether "an insured's failure to provide timely notice to an insurer is reasonable under the circumstances is ordinarily a question of fact precluding summary judgment." *Mount Vernon Fire Ins. Co. v. Abesol Realty Corp.*, 288 F. Supp. 2d 302, 311 (E.D.N.Y. 2003). The insured carries the burden of proof that any delay was reasonable. *Id.*

Here, Sunrise has offered evidence that submitting the additional damages contained in the Third Estimate was reasonable under the circumstances. Specifically, Sunrise submitted a declaration from its construction consultant, Mr. Minor, asserting that the Third Estimate "includes the benefit of having the policy holder walk 90% of the units and document the damages[, which]

---

[11] As explained below, New York Insurance Law § 3420, which imposes a prejudice requirement, does not apply to the Insurance Policy.

added a number of additional rooms and costs." (Pls. 56.1 Ex. D.)[12] That declaration further states that Mr. Minor was "only able to thoroughly inspect the roof and window when we obtained the proper and safe equipment and obtained a schedule," and that "[i]t is industry custom and practice to submit revised scopes and estimates as additional information is discovered." (*Id.*) The Court finds that these facts are sufficient to raise a triable issue as to whether Sunrise provided notice of the damages contained in the Third Estimate to Harleysville within a reasonable time under the circumstances.

Second, Harleysville has failed to establish that it is entitled to summary judgment on its claim that the circumstances surrounding Sunrise's submission of the damages in the Third Estimate demonstrate a failure to cooperate under the Insurance Policy. In order to prove that an insured failed to cooperate, an insurer bears the "heavy burden" of showing that (1) the insurer acted diligently in seeking to bring about the insured's cooperation; (2) the efforts employed by the insurer were reasonably calculated to obtain the insured's cooperation; and (3) the attitude of the insured, after his or her cooperation was sought, was one of willful and avowed obstruction. *E.g.*, SCW W. LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 528 (E.D.N.Y. 2012). Courts interpret the third element above to require a showing "that the circumstances support the inference that the insured's failure to cooperate was deliberate." *Mount Vernon Fire Ins. Co. v. 170 E. 106th St. Realty Corp.*, 212 A.D.2d 419, 420 (1st Dep't 1995).

In support of its claim that Sunrise has failed to cooperate, Harleysville argues that Sunrise possessed all of the information necessary to submit a complete estimate of damages well before November 9, 2015 and that there is no reasonable explanation for the belated notice. It also points to the fact that, at his examination under oath, Michael Morash testified that the Second Estimate was an accurate statement of damages. (Def. 56.1 ¶¶ 125-26.)

However, as explained above, Sunrise has submitted evidence that it did not have all of the necessary information before November 9, 2015, and that its delay was reasonable and accepted in the industry. (Pls. 56.1 Ex. D.) The fact that Michael Morash testified that the Second Estimate was an accurate statement of damages, before the damages in the Third Estimate were allegedly discovered, falls far short of establishing a deliberate failure to cooperate. Accordingly, construing the evidence most favorably to Sunrise, the Court concludes that summary judgment is unwarranted on Harleysville's claim that the Third Estimate should be dismissed for failure to cooperate.

Finally, genuine issues of material fact preclude summary judgment on Harleysville's claim that Sunrise should be estopped from relying on the Third

---

[12] Defendant argues that the Court should not consider Mr. Minor's declaration because it includes facts beyond the scope of his expert report and deposition testimony. The Court disagrees. "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)). Mr. Minor's declaration expressly states that it is made based on his personal knowledge and sets forth admissible facts that he would be competent to testify to at trial. In any event, even putting Mr. Minor's declaration aside, the Court finds that Harleysville has not established that any delay was unreasonable as a matter of law, and the Court concludes that whether any delay was reasonable is a question for the jury based on the disputed facts in this case.

Estimate. To establish equitable estoppel, Harleysville must demonstrate (1) conduct amounting to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. *E.g.*, *Intelligent Digital Sys., LLC v. Beazley Ins. Co.*, No. 12-CV-1209 (ADS) (GRB), 2015 WL 3915586, at *22 (E.D.N.Y. June 23, 2015). The Court denies summary judgment on this claim because, as discussed above, Harleysville has not presented uncontroverted evidence that plaintiffs knew about the additional damage before November 9, 2015, concealed those facts, or intended Harleysville to rely on their conduct.

Accordingly, the Court denies summary judgment on Harleysville's claim that the Third Estimate should be dismissed on summary judgment.

## IV. SUNRISE'S MOTIONS

Sunrise moves for summary judgment on Harleysville's third through fourteenth affirmative defenses.[13] Additionally, Sunrise moves to strike Harleysville's third, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh affirmative defenses as redundant under Federal Rule of Civil Procedure 12(f). For the reasons explained below, the motions are denied.

### A. Sunrise's Motion for Summary Judgment

As discussed below, genuine disputes of material fact preclude summary judgment on the third through fourteenth affirmative defenses.

#### 1. Third, Fourth, Fifth, Sixth, Eighth, and Thirteenth Affirmative Defenses

Harleysville's third, fourth, fifth, sixth, eighth, and thirteenth affirmative defenses allege that Sunrise failed to comply with various obligations under the Insurance Policy. Specifically, those affirmative defenses allege that Sunrise failed to comply with (1) all of the relevant terms of the Insurance Policy; (2) all of the conditions precedent to coverage under the Insurance Policy; (3) the Insurance Policy's property loss conditions; (4) Sunrise's duties in the event of loss or damage under the Insurance Policy; and (5) Sunrise's obligation under the Insurance Policy to provide Harleysville with a description of how, when, and where the loss or damage occurred. As explained in detail above, Harleysville has submitted evidence that Sunrise failed to fulfill these obligations under the Insurance Policy. (*E.g.*, Def. 56.1 ¶¶ 24-25, 33-41, 73-78, 138-54.) Although Sunrise disputes this evidence, Harleysville has offered sufficient evidence to preclude summary judgment. Accordingly, summary judgment is denied on these affirmative defenses.

#### 2. Seventh Affirmative Defense

Harleysville's seventh affirmative defense alleges that Sunrise failed to provide prompt notice of the loss, which bars recovery under the Insurance Policy. Sunrise argues that the evidence establishes that it provided timely notice and that, in any event, Harleysville was not prejudiced by any delay in receiving notice.

As explained above, under New York common law, "[t]imely notice is a condition precedent to insurance coverage and the failure to provide such notice relieves the insurer of its coverage obligation, regardless

---

[13] Harleysville has agreed to strike the twelfth affirmative defense. Accordingly, that affirmative defense is stricken.

of prejudice."[14] *Minasian*, 676 F. App'x at 31 (citation omitted). Under a "prompt" notice provision, "an insured must provide such notice within a 'reasonable' period of time under the circumstances." *Ticheli*, 2015 WL 12734163, at *4 (citing *Green Door Realty Corp.*, 329 F.3d 282 at 287); *see also Granite State Ins. Co.*, 2014 WL 1285507, at *13 (collecting cases). Whether "an insured's failure to provide timely notice to an insurer is reasonable under the circumstances is ordinarily a question of fact precluding summary judgment." *Mount Vernon Fire Ins. Co.*, 288 F. Supp. 2d at 311. The insured carries the burden of proof that any delay was reasonable. *Id.*

As an initial matter, the parties dispute whether New York Insurance Law § 3420, which requires insurers to demonstrate prejudice in order to disclaim coverage based on untimely notice, applies to the Insurance Policy. The Court concludes that Section 3420 does not apply to the Insurance Policy. As its title—"Liability insurance; standard provisions; right of injured person"—indicates, Section 3420 applies to liability insurance, not property insurance. *See, e.g.*, *Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 648 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 726 (2d Cir. 2014) ("Section 3420(a) of the New York Insurance Law specifies certain provisions that must be included in *liability insurance policies* issued or delivered in New York." (emphasis added)). Further, Section 3420(a) states that its provisions apply to insurance contracts "insuring *against liability* for injury to person . . . or *against liability* for injury to, or destruction of, property." N.Y. Ins. Law § 3420(a) (emphasis added).

Given the plain language of the statute, the Office of General Counsel to the New York State Insurance Department has stated that Section 3420 applies to only liability insurance policies. In response to an inquiry asking "Does the prejudice rule set forth in Insurance Law § 3420 only apply to liability policies?" the Office of General Counsel responded:

> The second query asks whether the prejudice rule set forth in Insurance Law § 3420, which prevents the invalidation of a claim due to untimely notice by the insured, injured person or any other claimant unless the failure to provide timely notice has prejudiced the insurer, only applies to liability policies. The inquirer asserts that in some states, the prejudice rule is not limited to liability policies, and asks whether non-liability policies in New York may contain a prejudice rule. *Insurance Law § 3420 is limited to establishing minimum requirements for liability policies.* That statute, however, does not preclude an insurer from adding a similar prejudice provision in non-liability policies. Nothing precludes an insurer from voluntarily including a prejudice rule in non-liability policies.

Office of General Counsel Op. No. 09-06-08 (June 23, 2009), http://www.dfs.ny.gov/insurance/ogco2009/rg090608.htm.[15]

---

[14] As explained below, New York Insurance Law § 3420, which imposes a prejudice requirement, does not apply to the Insurance Policy.

[15] Plaintiffs' assertion at oral argument that the Office of General Counsel's opinion is limited to Section 3420(d) is meritless. The opinion includes no such limitation; it does not even mention Section 3420(d). Moreover, Section 3420(d) requires *insurers* to *timely disclaim* liability for death or bodily injury. In contrast, the opinion discusses an *insured's* obligation to *timely notify* insurers of claims. Finally,

13

Finally, New York courts have continued to conclude that no prejudice showing is required when deciding whether to dismiss claims under property insurance contracts as untimely. *E.g.*, *Minasian*, 676 F. App'x at 31 (insurance contract covering jewelry). Accordingly, the Court concludes that Section 3420 does not apply to the Insurance Policy and, therefore, Harleysville is not required to demonstrate that it was prejudiced by Sunrise's alleged delay.

With respect to whether Sunrise provided prompt notice of the damage to the Rockville Centre Inn, the Court concludes that a genuine dispute as to the material facts precludes summary judgment on that issue. For example, Sunrise has submitted evidence that Michael Morash reported, via telephone, damage to all three Morash Family hotels on November 9, 2012 (Pls. 56.1 ¶¶ 181-84),[16] and that he additionally notified Harleysville via email on January 28, 2013 (*id.* ¶ 182). Harleysville, in turn, has submitted evidence that it did not receive notice on November 9, 2012, or on January 28, 2013. (Def. 56.1 ¶¶ 24-25, 29.) Ultimately, whether and when Harleysville was notified about damage to the Rockville Centre Inn, and whether any delay was reasonable, will involve credibility determinations not suitable for disposition on a motion for summary judgment. *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)). Accordingly, summary judgment is denied on Harleysville's seventh affirmative defense.

3. Ninth Affirmative Defense

Harleysville's ninth affirmative defense alleges that Sunrise failed to take all reasonable steps to protect its property after Hurricane Sandy. Harleysville argues that the fact that the Third Estimate, submitted in November 2015, included a significantly higher estimate of damages than the Second Estimate, submitted in July 2013, is evidence that Sunrise failed to mitigate its damages in accordance with this provision of the Insurance Policy. Sunrise argues that the Third Estimate does not evidence a failure to mitigate damages, and again asserts that the Third Estimate uncovered existing damages that it had not previously been able to inspect for the reasons asserted in Mr. Minor's affidavit. Accordingly, the Court finds that a genuine dispute of fact exists as to whether Sunrise failed to take reasonable steps to protect its property and denies summary judgment on this affirmative defense.

4. Tenth Affirmative Defense

Harleysville's tenth affirmative defense alleges that Sunrise failed to cooperate with the investigation of the claim as required under the Insurance Policy. Sunrise argues that the record evidence establishes that Sunrise cooperated with Harleysville's investigation. In response, Harleysville again argues that Third Estimate

---

when discussing the "new 'prejudice' standard," the OGC's opinion cites Section 3420(a).

[16] Harleysville contends that the Court should not consider the affidavit submitted by Michael Morash stating that he called in damage to all three hotels because it contradicts his testimony at his examination under oath, and therefore violates the sham affidavit doctrine. However, at his examination under oath, only portions of which were submitted to the Court, Michael Morash appears to have testified that he did not recall the specific conversation with the broker. Accordingly, the Court is not convinced that his affidavit "'inescapably and unequivocally' contradicts his earlier testimony without explanation." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 206 (2d Cir. 2014); *see also Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000).

14

demonstrates a failure to cooperate. Harleysville also relies on additional record evidence that it argues more broadly evidences Sunrise's failure to cooperate. For example, Harleysville points to evidence that Mr. Minor canceled two inspections of the Rockville Centre Inn in May 2013 (Def. 56.1 ¶¶ 44-46); that no one familiar with the damage to the Rockville Centre Inn attended the July 2013 inspection (*id.* ¶¶ 73-77); and that Sunrise did not provide any documents responsive to Harleysville's request for information pertaining to its business income losses claim (*id.* ¶ 112). The Court finds that the above evidence is sufficient to establish a genuine dispute of material fact as to whether Sunrise cooperated with Harleysville's investigation of the claim, and thus denies summary judgment on this affirmative defense.

### 5. Eleventh Affirmative Defense

Harleysville's eleventh affirmative defense alleges that Sunrise failed to produce for inspection and make available for copying documents requested by Harleysville. The Court finds that Harleysville has offered sufficient evidence to create a genuine dispute as to this affirmative defense (*see id.* ¶¶ 101-12), and accordingly denies summary judgment.

### 6. Fourteenth Affirmative Defense

Finally, Harleysville's fourteenth affirmative defense alleges that Sunrise's claims are barred by the late presentation of its claim resulting in prejudice to defendant. As Harleysville's opposition makes clear, this affirmative defense relates to Sunrise's allegedly untimely submission of the Third Estimate. As explained above, a genuine dispute of material fact exists as to whether Sunrise submitted the Third Estimate in a reasonable time under the circumstances. Accordingly, summary judgment is denied on this affirmative defense.

## B. Sunrise's Motion to Strike

Sunrise moves to strike the third through eleventh affirmative defenses as redundant under Federal Rule of Civil Procedure 12(f). For the reasons that follow, the motion is denied. Rule 12(f) permits a court to strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike affirmative defenses are 'generally disfavored.'" *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 154-55 (S.D.N.Y. 2003) (quoting *Simon v. Mfrs. Hanover Tr. Co.*, 849 F. Supp. 880, 882 (S.D.N.Y.1994)). To prevail, "a plaintiff must show that there is no question of fact which might allow the defense to succeed, that there is no question of law which might allow the defense to succeed, and that the plaintiff would be prejudiced by inclusion of the defense." *E.g.*, *Tardif v. City of New York*, 302 F.R.D. 31, 32 (S.D.N.Y. 2014).

Here, as explained above, there are questions of fact and law that might allow these affirmative defenses to succeed. Moreover, although many of the affirmative defenses factually overlap, they address different legal defenses (as discussed above). With respect to prejudice, the Court concludes that Sunrise will not be prejudiced by the Court permitting these affirmative defenses to remain in the case. The parties have completed discovery, during which they engaged in extensive letter briefing on these issues, and fully briefed motions for summary judgment. Thus, Sunrise has full knowledge of the facts underlying these affirmative defenses. Moreover, these affirmative defenses are intricately related to the merits of Sunrise's claims, and will not unnecessarily prolong the trial. *Calabrese v. CSC Holdings, Inc.*, No. CV 02-5171(DLI)(JO), 2006 WL 544394, at *4 (E.D.N.Y. Mar. 6, 2006)). Sunrise has

failed to articulate how it would be prejudiced if these affirmative defenses remain, and its "mere assertions" that it will be prejudice are insufficient. *Cty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002).[17] Accordingly, the Court denies Sunrise's motion to strike these affirmative defenses as redundant because Sunrise will not be prejudiced by their inclusion.

V. CONCLUSION

For the foregoing reasons, the Court grants Harleysville's motion for summary judgment on (1) Sunrise's claim for business income losses; (2) Sunrise's claim for consequential damages; and (3) Sunrise's claim for attorney's fees and costs. The Court denies Harleysville's motion for summary judgment on plaintiffs' Third Estimate of Damages because there are disputed issues of fact that preclude summary judgment on the issue of whether the Third Estimate of Damages was timely under the Insurance Policy. Finally, the Court denies Sunrise's motion for summary judgment and motion to strike.

SO ORDERED.

———————————————
JOSEPH F. BIANCO
United States District Judge

Dated: March 28, 2018
Central Islip, NY

\* \* \*

Plaintiffs are represented by Jason Marc Cieri, Phillip N. Sanov, and Javier Delgado of Merlin Law Group, 100 Park Avenue, New York, New York 10017. Defendant is represented by Pejman Nassi and Benjamin R. Messing of Kaufman Dolowich & Voluck LLP, 1777 Sentry Parkway West, Blue Bell, Pennsylvania 19422.

---

[17] The Court additionally notes that, under Rule 12(f), Sunrise had twenty-one days from the date of Harleysville's Answer to the Amended Complaint to move to strike any affirmative defenses. Fed. R. Civ. P. 12(f). Harleysville answered the Amended Complaint on August 10, 2016 (ECF No. 85), and Sunrise moved to strike on July 28, 2017 (ECF No. 108). Thus, Sunrise's motion to strike is untimely. *See, e.g., Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361, 372 (S.D.N.Y. 2006), *aff'd*, 309 F. App'x 483 (2d Cir. 2009).